UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| JOANNE D. SMITH-HILEMAN, | ) | No. CV 07-01886-VBK |
| Plaintiff, | )<br>)<br>) | MEMORANDUM OPINION<br>AND ORDER |
| v. | )<br>) | (Social Security Case) |
| MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security, | )<br>)<br>) | |
| Defendant. | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits. Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge. The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the Administrative Record ("AR") before the Commissioner. The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified AR.

Plaintiff raises the following issues:

1. Whether the Administrative Law Judge ("ALJ") impermissibly

      rejected Plaintiff's subjective complaints.
(JS at 5.)

This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law. After reviewing the matter, the Court concludes that for the reasons set forth, the decision of the Commissioner must be reversed and the matter remanded.

**I**

**THE CASE WILL BE REMANDED FOR FURTHER HEARING**

**TO REEVALUATE PLAINTIFF'S SUBJECTIVE COMPLAINTS**

Plaintiff raises a single issue of error in the ALJ's decision: whether the ALJ impermissibly rejected her subjective complaints. (JS at 5.) For the reasons to be set forth, the Court agrees, and will remand for further hearing.

At the administrative hearing (AR 514-566), Plaintiff provided substantial testimony about her pain. This testimony is well summarized in her portion of the JS (see, Id. at 6-8.) She testified as to neck pain; pain in her temples; the top of her head, and shoulders, down to the fingertips; her legs; headaches which have become progressively more intense over the years; neck pain; hand problems, and what she called "grey outs." She also testified as to burning sensations in her legs, and as to her depression.

As the ALJ correctly noted, "a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone." (AR at 403, citing 20 C.F.R. 416.929(c).) The ALJ also noted the factors which must be evaluated in the credibility determination, as set forth in Social Security

Ruling ("SSR") 96-7p.  Finally, as the parties note, the analysis of credibility is conducted in two steps.  First, it must be determined whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms.  If so, then the Commissioner is charged with evaluating the intensity, persistence and limiting effects of those symptoms. (See Bunnell v. Sullivan 947 F.2d 341, 345 (9th Cir. 1991)(en banc).

The ALJ depreciated Plaintiff's description of her subjective pain, and set forth a list of reasons.  The Court's task is to determine if the reasons cited in the decision are supported by the record, and are sufficiently specific and legitimate to undermine Plaintiff's credibility.

Although not numbered in the decision, the Court notes the following factors cited in the ALJ's decision in the section devoted to credibility:

1. A history of intermittent depression associated with a decline in Plaintiff's physical health and her being in constant, chronic pain;
2. A form provided by her physician, Dr. Earle;
3. A seizure questionnaire which Plaintiff completed;
4. Tension headaches secondary to neck strain;
5. Objective evidence, such as a CT scan and MRI studies both conducted in 2004.

The ALJ substantially relied upon the testimony of Dr. Nafoosi, a medical expert ("ME").  Dr. Nafoosi testified that Plaintiff does have a condition which could result in headaches such as she

described. (AR 529.) Consequently, the first part of the Bunnell test is met, and the Court must now turn to whether or not specific and legitimate reasons were provided in the decision to depreciate credibility.

**A.   History of Depression.**

The ALJ devotes substantial space to a discussion of Plaintiff's depression. She said she was depressed and is tired of hurting. In attempting to describe her ability to focus, she provided the following testimony:

> "Yeah, I can't concentrate on anything anymore. I try to read a book and I'm reading the same page three or four times. You know nothing's making -- it's not making sense now. I love to read. I love doing crafts and stuff. I can't do any of that anymore. I'm not who I used to be."

(AR 547.)

In determining Plaintiff's mental and physical residual functional capacity ("RFC"), the ALJ did accord some credibility to Plaintiff's complaints of depression, indicating that, "mentally, the claimant can perform moderately complex work performed in a habituated work setting due to mild to moderate limitations in her ability to handle stress in the workplace and work not requiring safety operations or hypervigilance." (AR 403.)

Considering that the ALJ on the one hand assessed mental RFC restrictions which are related to her history of intermittent depression, it is difficult to determine why her description of her depression was also utilized to depreciate her credibility.

4

Both the ALJ and the Commissioner cite a Complete Psychiatric Evaluation performed on July 13, 2004 at the request of the Department of Social Services (AR 296-299), for the proposition that Plaintiff does not suffer from a thought disorder or any cognitive deficits. (See JS at 16, AR at 404.) But Plaintiff does not claim that level of mental impairment; rather, she only articulated that she has chronic depression. The issue is whether she should be accorded credibility as to that complaint. On this score, the Court cannot find any legitimate basis in the ALJ's decision to detract from Plaintiff's credibility as to this issue.

**B.  A Form Provided by Dr. Earle; a Seizure Questionnaire; and Tension Headaches Secondary to Neck Strain**.

The ALJ gave no weight to a form provided by Dr. Earle, a treating source, which references Plaintiff's chronic pain. The ALJ determined that this document is unsupported by any specific clinical or objective findings.

It would appear that the ALJ is attempting to detract from Plaintiff's credibility based upon the absence of any objective medical evidence to support her pain complaints. The portion of Dr. Earle's handwritten note (see AR 505) to which the ALJ is referring is not the assessment that Plaintiff is unable to maintain a regular job, but the following four words: "She has chronic pain." (Id.) Pain, of course, is a subjective condition. The question is whether there is any objective evidence to support complaints of pain. The ALJ determined that Plaintiff's severe impairments include musculoskeletal impairments involving the cervical and lumbar spine, and headaches secondary to her cervical spine disorder. (AR 401.) One searches in

5

vain in the ALJ's decision for any discussion of these physical impairments and the symptoms they cause.  Despite that, the ALJ assessed a physical RFC which precluded Plaintiff from lifting more than "20 pounds occasionally [sic] and 10 pounds occasionally," and "pushing and pulling limitations consistent with lifting and carrying limitations due to her back, neck and asthma." (AR 403.)  He further assessed that Plaintiff must be provided a sit/stand option which would permit her to change position every one to three minutes.  Based on these limitations, and the lack of any adequate discussion in the decision, the Court cannot determine why the ALJ gave no weight to Dr. Earle's statement that Plaintiff has chronic pain.

The ALJ also addressed Plaintiff's seizure questionnaire (AR 500-504), noting that Plaintiff does not include a loss of consciousness, convulsions, tongue-biting, or loss of bladder control in her descriptions of her seizures.  This is a somewhat perplexing conclusion, because the ALJ accepted Plaintiff's description of her seizures as "grey outs," and based on this assessment, imposed certain physical activity restrictions in her work capacity. (AR 403.) Similarly, while apparently faulting Plaintiff for "conceding" that she did not take medications for her seizures, the ALJ made no reference to Plaintiff's statement that she does not take medications for this condition due to financial inability to afford them, e.g., until she can afford to go back to a neurologist and the cause can be determined. (AR 503.)

Finally, while acknowledging that the record documents tension headaches secondary to neck strain, the ALJ notes that Plaintiff was thrown from a horse, and queries "why she was on a horse with an asserted seizure disorder is quite puzzling." (AR 405.)  The ALJ

1  misapprehended the record, as Plaintiff clearly noted in her seizure
2  questionnaire that she began having grey outs "since I fell off the
3  horse running at full speed, winter of 1987." (AR 503.)
4      The ALJ noted that Plaintiff had a CT scan and an MRI, both in
5  2004, and concluded that they were "entirely normal," [and] "revealed
6  no evidence of acute intracranial abnormality." (AR 405.)  But this
7  reference is, at best, ambiguous.  By it, did the ALJ mean to say that
8  Plaintiff does not suffer from headaches, or depression, or that she
9  does not have seizures?   The Court has no basis to make a
10 determination in that regard.
11     As predicted by Plaintiff in the JS, the Commissioner has added
12 additional credibility factors which the ALJ did not consider. (See JS
13 at 14.)  These include the Commissioner's conclusion or inference that
14 Plaintiff wanted to divorce or leave her spouse, needed to obtain
15 Social Security benefits in order to accomplish this, and therefore
16 had a "secondary motive in wanting disability benefits." (JS at 14.)
17 Next, the Commissioner injects supposed "contradictory and unreliable"
18 statements made by Plaintiff about her past work history, again
19 supposing that Plaintiff had an "alternative motivation to receive
20 benefits and her willingness to hide information regarding her
21 earnings, diminished the over-all credibility of Plaintiff's claims."
22 (Id.)
23     Suffice it to say that these two observations by the Commissioner
24 are nothing more than speculative inferences, and have no basis in a
25 credibility determination.  The ALJ did not rely upon them, and the
26 Court instructs that they will not be utilized in the credibility
27 determination on remand.
28 //

For the foregoing reasons, this matter will be remanded for further hearing consistent with this Memorandum Opinion.

**IT IS SO ORDERED.**

DATED: August 11, 2011                    /s/
                                    VICTOR B. KENTON
                                    UNITED STATES MAGISTRATE JUDGE